UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Schroeder Western Investments, LLC | ) |
| | ) |
| Plaintiff, | ) CASE NO. 13-cv-50326 |
| v. | ) |
| | ) Judge Frederick Kapala |
| Bakken Holding & Investment, LLC, Todd | ) |
| Harris, Karl Troestler, Dave Kassera, Stacy | ) |
| Hinkle and Goliath Holdings and Investment, | ) Magistrate Judge P. Michael Mahoney |
| LLC, Kim Harris, Vladimar Ocanas, Dean | ) |
| Harris, Ed Parker, Steve Quick, Goliath | ) Trial by Jury Demanded |
| Industries, LLC | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

NOW COMES, Plaintiff, Schroeder Western Investment, LLC,(herein "Plaintiff" or "SWI") by and through its attorney, Robert T. Hanlon and the Law Offices of Robert T. Hanlon & Associates, P.C., with its' complaint against Bakken Holding & Investment, LLC ("BAKKEN"), Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, Steve Quick, and Goliath Holdings and Investment, LLC ("GOLIATH A"), and Goliath Industries LLC ("GOLIATH B") (Collectively "Defendants") and state as follows:

### I. NATURE OF THE CASE

1. This Complaint is brought to vindicate the rights of the Plaintiff, who has been deprived of property and money as a result of Defendants' actions and omissions since January 2011 or thereabouts. The Defendants' acts and omissions constitute an unlawful scheme to defraud, cheat, steal, and convert property and money belonging to Plaintiff through manipulation of rents and accounting associated with the operation of a property located in North Dakota in which Plaintiff invested in excess of $2,000,000.00 for a 50% interest in BAKKEN.

1

Specifically, funds collected from the investment and the rental operation of the Property (as hereinafter defined) were supposed to be deposited into an account for the benefit of BAKKEN and SWI but were deposited into the accounts of Goliath B and then disbursed to the various defendants named herein without consideration to Plaintiff or BAKKEN. The Defendants created a scheme and artifice in order to conceal and hide the use of Plaintiffs funds for the personal benefit of Defendants, whereby at least two million dollars ($2,000,000.00) was unlawfully taken from the Plaintiff and a portion of Plaintiffs money was used to provide the appearance that Defendants were operating a legitimate business operation.

2. Through the implementation of this scheme, the Defendants conducted or participated in an association-in-fact enterprise and a pattern of racketeering activity consisting of mail fraud, wire fraud, and the transportation of stolen or converted money in interstate commerce. This enterprise consisted of the marketing, accounting, and operations and records units of the Defendants, GOLIATH A, and GOLIATH B'S accounts, and entities controlled by the individual (non-corporate entities) defendants. The Defendants received assets of Plaintiff which was derived from their racketeering enterprise, some portion of which were used by defendants for their own personal pecuniary gain.

## PARTIES

3. Plaintiff is a resident and citizen of the State of Illinois having incorporated and maintaining its only office in Illinois.

4. The Defendant, BAKKEN is incorporated in the State of Colorado and has its principal place of business at 1204 Grand, Glenwood Springs, CO 81601.

5. The Defendant, BAKKEN, is a citizen of the State of Colorado and at all times relevant to this complaint, Bakken was under the exclusive control of the remaining defendants.

6. The Defendant, Goliath A is a citizen of the State of Colorado. Goliath A is incorporated in the State of Colorado, and has its the principal place of Business in Colorado.

7. The Defendant, Goliath B is a citizen of the State of Colorado. Goliath B is incorporated in the State of Colorado, and has its the principal place of Business in Colorado.

8. The Defendant, Todd Harris, resides within and is a citizen of the State of Colorado.

9. The Defendant, Kim Harris, resides within and is a citizen of the State of Colorado.

10. The Defendant, Karl Troestler, resides within and is a citizen of the State of Colorado.

11. The Defendant, Dave Kassera resides within and is a citizen of the State of Colorado.

12. The Defendant, Stacy Hinkle is believed to reside within and is a citizen of the State of Texas and resided in the state of Colorado and was a citizen of Colorado prior to the filing of the original complaint in this case.

13. The Defendant, Vladimar Ocanas resides within and is a citizen of the State of Colorado.

14. The Defendant, Dean Harris resides within and is a citizen of the State of Colorado.

15. The Defendant, Ed Parker resides within and is a citizen of the State of Colorado.

16. The Defendant, Steve Quick resides within and is a citizen of the State of Colorado.

17. There is complete diversity of citizenship between Plaintiff and all Defendants named herein.

## JURISDICTION

18. Plaintiffs' federal claims for relief allege violations of the Racketeering Influenced and Corruption Organization Act (RICO), 18 U.S.C. § 1961 *et. seq*. This Court has jurisdiction over these claims pursuant to 18 U.S.C. § 1964(a) and (c), 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this cause because there is complete diversity of citizenship and the amounts in controversy substantially exceed $75,000 and are in excess of $2,000,000.00. Moreover this Court has jurisdiction pursuant to the Organized Crime Control Act of 1970, Title IX , Racketeer Influenced and Corrupt Organizations Statute (18 U.S.C. §§ 1961-1968).

## VENUE.

19. Venue in this district is proper pursuant to 18 U.S.C. § 1965(a) and (b) and 28 U.S.C. § 1391 (b) because (i) the Defendants are found, have an agent, and/or transact their affairs in this judicial district, and (ii) a substantial part of the events or omissions giving rise to the claims for relief occurred in this district.

## RELEVANT FACTS.

20. Bakken Holdings & Investment, LLC via its employees (defendants named herein) solicited investments from Schroeder Western Investments, LLC with said solicitation taking place in Illinois.

4

21. Defendants represented that the investment of Schroeder Western Investments, LLC would be used for the specific purpose of investment in real estate located at 14050 Highway 85 North, Alexander North Dakota 58831 and has improvements with 149 rental units (the "Property"). The Property is situated in the general area of the Bakken oil fields which has generated substantial influx of workers and limited temporary housing and general housing in the area in and around Alexander, North Dakota. (Alexander and nearby Minot are modern day boom towns.)

22. Plaintiff invested in excess of $2,000,000 which was supposed to be devoted entirely assets controlled by Defendants known as Bakken Base Camp situated upon the Property. The ownership in BAKKEN was supposed to be split between Plaintiff and Goliath A. Both GOLIATH A and Plaintiff were to invest equal amounts in BAKKEN and the income was to be disbursed equally between Plaintiff and GOLIATH A.

23. In the original pro-forma provided to Plaintiff, by Defendants Goliath A, Goliath B, Todd Harris, Karl Troestler, and defendants so listed herein represented that the daily rental rates were $120.00 for the 149 rental units were constructed on the Property. In fact, when the property was being run for its intended use it attained rents of at least $120 per day.

24. The daily rent represented reflects a gross income before vacancy loss and expenses to be $529,200 per month.

25. BAKKEN was formed to have its interests divided equally between Goliath A and SWI.

26. To date Plaintiff has not received a single return on its investment despite over one full year of operations and numerous distributions to the remaining defendants exceeding $1.7 million and the comingling of funds by defendants in GOLIATH B.

5

27. Plaintiff's investments in BAKKEN were made by check and wire transfer dispatched in interstate commerce as well as providing earthwork and construction on the Property. The total of Plaintiff's investment was in excess of $2,000,000.

28. Upon information and belief, Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, and Steve Quick, did not make any capital contribution equal to their claimed percentage interests in BAKKEN, GOLIATH A or GOLIATH B.

29. The sum total of interests claimed by Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, and Kim Harris, and GOLIATH in addition to the 50% claimed by Plaintiff exceed 100% of BAKKEN.

30. Upon information and belief, any capital contribution made to the Defendants was returned without a commensurate payment to the Plaintiff.

31. The Defendant, BAKKEN has paid excessive salaries and wages well above the market for the services received by BAKKEN to the other named Defendants in order to conceal the embezzlement described herein.

32. All of the rental income received by BAKKEN was deposited into the accounts of Goliath A, and/or Goliath B.

33. On Information and belief, On September 13, 2011, the Defendants, Todd Harris and Kim Harris wire transferred from Goliath B's account containing the rents of BAKKEN a sum of $267,025.19 to pay for a personal residence, despite not distributing a penny to Plaintiff in the same period of time.

34. On May 15, 2012 or thereabouts, Todd Harris withdrew $80,000 from the account of Goliath B's containing the rents of BAKKEN to pay for a Condominium used exclusively by Todd Harris and Kim Harris' family.

35. On or about June 12, 2012, Todd Harris withdrew $55,000 from the account containing the rents of BAKKEN to pay for the personal expense of Todd Harris. Specifically, the $55,000 withdrawn on June 12, 2012 was used to pay for Todd Harris' alcohol rehab treatment in Malibu California.

36. On or about October 14, 2012, Todd Harris withdrew $17,837.00 from the account of Goliath B containing the rents of BAKKEN to pay for Todd Harris' Personal income taxes.

37. On or about May 16, 2013, Todd Harris withdrew $3,335.36 from the account of Goliath B containing the rents of BAKKEN to pay for Todd Harris' Personal income taxes.

38. On or about April 3, 2013 Todd Harris withdrew $9,389.00 from the account of Goliath B to Pay the Colorado Department of Revenue for taxes due by Todd Harris.

39. On Information and belief, the remaining individual defendants, (Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, Steve Quick) withdrew at least $1,700,000.00 from the Goliath B account containing the rents of BAKKEN to pay personal expenses of defendants, despite not distributing a penny to Plaintiff in the same period of time.

40. Upon Information and belief, the Defendant Goliath B was used by Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, Steve Quick as a vehicle to hide and conceal the fraudulent takings by Todd Harris, Karl

Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, Steve Quick.

41. Upon Information and belief GOLIATH B is retaining funds belonging to SWI.

42. In August 2012, without consideration, Defendants attempted to reduce the percentage ownership of Plaintiff in BAKKEN to 25%.

43. On or about August 27, 2013, Plaintiff's agents began asking for financial information related to the operations of BAKKEN.

44. Despite attempting to review all of the records of BAKKEN, Plaintiff has not received all of the financial information requested from GOLIATH A, GOLIATH B and BAKKEN.

45. On several occasions in 2011, 2012 and 2013 Todd Harris and Kim Harris withdrew money from the accounts of Goliath B that were holding funds of BAKKEN for their own personal use and benefit.

46. In truth and in fact, revenue generated by BAKKEN has been diverted to Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, Steve Quick for their personal benefit without any consideration to Plaintiff or BAKKEN, which Plaintiff has a substantial pecuniary interest.

47. In the period of January 1, 2013 to July 1, 2013 amounts disbursed to the individuals which was the property of SWI and BAKKEN are as follows (although not believed to be fully inclusive as Plaintiffs investigation has just recently began):

    a. Todd Harris         $434,862.19

    b. Kim Harris          $365,157.36

    c. Vladimar Ocanas    $327,475.00

    d. Stacy Hinkle        $278,978.00

  e. Steve Quick    $188,900.00

  f. Karl Troestler   $56,500.00

  g. Dean Harris    $46,128.00

  h. Ed Parker    $19,750.00

48. The amounts above are disbursements from the account containing funds rightfully belonging to BAKKEN totals $1,717,750.55, of which SWI has an equitable interest of at least $858,875.28 and no disbursement of a similar amount was made to SWI.

49. None of the transactions referenced herein were authorized by BAKKEN or SWI.

50. Defendants also solicited investments from others for the same investment already sold to Plaintiff in furtherance of the scheme and artifice to defraud Plaintiff.

51. Defendants also commenced construction upon the land owned by BAKKEN for the explicit use of others whereupon funds were diverted from BAKKEN to GOLIATH A and Goliath B in amounts well in excess of $100,000.

52. Defendants used the operating funds from BAKKEN to pay for capital expenses of Goliath A and Goliath B without consideration to BAKKEN or Plaintiff.

53. Defendants commenced construction of additional buildings on the Property without consent of SWI and without the consent of the ground lessor.

54. The construction of the additional building on the Property was done without obtaining all necessary governmental approvals and permits and therefore impedes the associated property rights.

55. The Defendants' construction of additional structures on the Property without obtaining Plaintiff's consent dramatically interferes with the property rights of Bakken in which SWI has a 50% interest.

## COUNT I
## ( RACKETEER INFLUENCED COURPT ORGANIZATIONS ACT)

56.     Plaintiff restates and re-alleges paragraphs 1-55 in this Count I as if fully restated herein.

57.     BAKKEN, Goliath A, Goliath B, and the individual named defendants, and others known and unknown to the Plaintiff, were at all relevant times, an enterprise with a continuing organization and structure over a number of years, who were associated in fact for the purposes of, among other things, providing an organization and structure for the purpose of defrauding Plaintiff and others related to investments in BAKKEN.

58.     All defendants were involved and participated directly in the scheme and artifice to defraud the Plaintiff whereby the Defendants diverted funds from BAKKEN to either Goliath A or Goliath B and then disbursed funds to the individual named defendants and others.

59.     The legal entities and individuals named herein and associated via BAKKEN or GOLIATH have constituted and continue to constitute and an association-in-fact enterprise, which engaged in, and whose activities affected, interstate commerce.

60.     The named Defendants agreed to and did conduct and participate in the conduct of the enterprise for the unlawful purpose of embezzling money and property from Plaintiff in and affecting interstate commerce, and of defrauding Plaintiff of its property rights under an operating agreement through material false statements to Plaintiff and others including the representations and promises to Plaintiffs' agents and employees.

61.     Specifically, each defendant conducted and directly participated in the conduct of the enterprise and agreed to do so pursuant to a pattern of racketeering activity consisting of at least two acts of mail fraud and embezzlement or attempted embezzlement by virtue of participating in and devising a scheme to deprive Plaintiff of its contractual rights in the

operating agreement and the operation of Both BAKKEN and GOLIATH A and GOLIATH B, whereupon money was converted and co-mingled ultimately for the personal use of Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, and Steve Quick.

62. In truth and in fact, most of the revenue generated by BAKKEN has been diverted to Todd Harris, Karl Troestler, Dave Kassera, Stacy Hinkle, Kim Harris, Vladimar Ocanas, Dean Harris, Ed Parker, and Steve Quick for their personal benefit without any consideration to Plaintiff or BAKKEN which Plaintiff has a substantial pecuniary interest.

63. Pursuant to and in furtherance of the scheme, commencing in or about 2011, and continuing to the present, defendants and other individuals, aided and abetted by and acting in concert with each other and other Defendants in committing multiple acts of mail fraud in violation of 18 U.S.C. § 1341 and/or embezzlement affecting commerce in violation of 18 U.S.C. §§ 1961-1968. Such acts include but are not limited to the following:

- A) Keeping track of illicit funds by use of the United States Mails including obtaining bank statements of Goliath A and Goliath B and communications with the parties to the BAKKEN operating agreement.

- B) Receiving checks in interstate commerce for the investment of Schroeder Western Investment LLC.

- C) Using E-mail to convey in interstate commerce communications in furtherance of the scheme and artifice to defraud.

- D) Use of the internet to transfer funds within Wells Fargo Bank.

- E) Making false statements to Wells Fargo Bank and Alpine Bank in connection with the scheme and artifice to defraud.

- F) Theft of money belonging to BAKKEN and Plaintiff without lawful consideration.

- G) The taking of money by defendants was done with the intent to permanently deprive the Plaintiff of its lawful right to said money.

11

H) Engaging in extortion in furtherance of the scheme and artifice to defraud Karl Troestler used the means of interstate commerce and wires to a send text message to implement the wrongful use of fear against Brent Schroeder whereby said text indicated that Brent Schroeder would face criminal prosecution if he did not get his family to dismiss this lawsuit (a pecuniary gain to the Defendants).

I) Transporting stolen goods and moneys across state lines, and in particular from North Dakota, to South Dakota to Colorado and from Illinois across state lines across each state to Colorado.

Wherefore, Plaintiff's pray that this honorable Court grant the following relief:

A) Enter judgment in favor of the plaintiff and against the Defendants jointly and severally for an amount of at least $2,000,000.00;

B) Treble Damages;

B) Award Plaintiff its reasonable attorney fees and costs;

A) Order each of the Defendants to divest themselves of any interest, direct or indirect, in BAKKEN, Goliath Industries LLC, and Goliath Holdings and Investments, LLC;

B) Restrain Defendants from further participation in activities or investments related to the Property;

C) Restrain Defendants from further disposition of property rightfully belonging to Plaintiff or otherwise obtained as part of the scheme and artifice described herein;

D) Prohibit defendants from engaging in the same type of endeavor as Goliath Industries, LLC and BAKKEN which affect interstate or foreign commerce;

E) Ordering dissolution or reorganization of Both Goliath Industries LLC and Bakken Holdings and Investments LLC;

F) An order appointing a receiver for the PROPERTY.

H) for such other and further relief as this court deems just and equitable.

## COUNT II EMBEZZLEMENT

64. Plaintiff restates and re-alleges paragraphs 1-55 in this Count II as if fully restated herein.

65. There was a trust or fiduciary relationship between the defendants and Plaintiff,

66. The Plaintiff's money and property came into the possession or care of the Defendants by virtue of their relationship to BAKKEN as employees or agents of BAKKEN;

67. The defendant's dealings with the Property and revenue associated therewith and the investment of Plaintiff in BAKKEN constituted a fraudulent conversion or appropriation of plaintiff's assets to the use of the defendants.

68. The defendants acted with the intent to deprive the SWI of its money that was supposed to be invested in BAKKEN of the use of SWI's money.

69. Plaintiff suffered a loss of at least $2,000,000.00

Wherefore, Plaintiff's pray that this honorable Court grant the following relief:

A: Enter judgment in favor of the plaintiff and against the Defendants jointly and severally for an amount of at least $2,000,000;

B. Award Plaintiff its reasonable attorney fees and costs.

C: Treble Damages;

D: for such other and further relief as this court deems just and equitable.

## COUNT III (CONVERSION)

70. Plaintiff restates and re-alleges paragraphs 1-55 in this Count III as if fully restated herein.

71. Demand has been made upon the defendants for return of funds unjustly converted and Defendants have failed to return such funds taken by defendants.

72. Defendants failed to return the funds taken by them and have no just reason for retaining the funds taken by them.

73. Plaintiff has suffered damages of at least $2,000,000.00 as the direct and proximate cause of defendants conduct outlined herein.

Wherefore, Plaintiff's pray that this honorable Court grant the following relief:

A: Enter judgment in favor of the plaintiff and against the Defendants jointly and severally for an amount of at least $2,000,000.00;

B. an award of reasonable attorney fees and costs;

C: for such other and further relief as this court deems just and equitable.

## COUNT IV
### (QUANTUM MERUIT AGAINST ALL NAMED DEFENDANTS)

74. Plaintiff restates and re-alleges paragraphs 1-55 in this Count IV as if fully restated herein.

75. Plaintiff expected a return on and of its investment.

76. Defendants were each unjustly enriched by the conduct set forth in paragraphs 1-55.

77. Plaintiff has suffered damages of at least $2,000,000.00 as the direct and proximate cause of defendants conduct outlined herein.

WHEREFORE, Plaintiff's pray that this honorable Court grant the following relief:

A: Enter judgment in favor of the plaintiff and against the Defendants jointly and severally for an amount of at least $2,000,000 or such other amount established as damages in this cause at trial or prove-up;

B. Award Plaintiff its reasonable attorney fees and costs;

C: for such other and further relief as this court deems just and equitable.

## COUNT V
### (DERIVATIVE ACTION TO RECOVER FUNDS AND OTHER PROPERTY TAKEN FROM BAKKEN – AS TO ALL DEFENDANTS EXCEPT BAKKEN)

78. Plaintiff restates and re-alleges paragraphs 1-77 in this Count V as if fully restated herein.

79. Plaintiff incorporates all other counts set forth in this complaint in this derivative action.

80. Plaintiff possesses a 50% interest in ownership interest in BAKKEN.

81. The management of Bakken has diverted funds from BAKKEN as set forth hereinabove.

82. The present management of BAKKEN has failed to manage the affairs of BAKKEN in any commercially reasonable measure.

83. The present management of BAKKEN has allowed the use of the Property by interests other than those of BAKKEN.

84. The present management of BAKKEN has failed to keep proper records of BAKKEN.

85. The present management of BAKKEN has allowed the property to lay to waste by failing to collect rents for the Property, failing to maintain the Property, failing to market the Property, and failing to take commercially reasonable measures to protect the income that could be generated by the Property, failing to keep the operations of the Property ongoing.

86. Plaintiff has suffered an injury to the interests in land associated with its investment in BAKKEN and the Property.

> **WHEREFORE**, Plaintiff's pray that this honorable Court grant the following relief:
>
> A: Enter judgment in favor of the Plaintiff and against the Defendants jointly and severally for an amount of at least $2,000,000.
>
> B. Award Plaintiff its reasonable attorney fees and costs.
>
> C. Appoint a receiver for the Property with the receiver providing proper accounting for the rents and revenues at the Property under the supervision of this court.
>
> D: for such other and further relief as this court deems just and equitable.

## COUNT VI INJUNCTIVE RELIEF

87. Plaintiff restates and re-alleges paragraphs 1-55 in this Count IV as if fully restated herein.

88. Plaintiff possesses a 50% interest in ownership interest in BAKKEN.

89. The management of Bakken has diverted funds from BAKKEN as set forth hereinabove.

90. The present management of BAKKEN has failed to manage the affairs of BAKKEN in any commercially reasonable measure.

91. In particular, Defendants were to have invested funds to provide for all kitchen equipment and leased the kitchen equipment from a third party and then failed to make the payments on the kitchen equipment which has resulted in a default to the kitchen equipment supplier who in turn is demanding return of all equipment. No operation of the Property can be had without the existence of the Kitchen and its equipment.

92. The present management of BAKKEN has allowed the use of the Property by interests other than those of BAKKEN and Plaintiff.

93. The present management of BAKKEN has failed to keep proper records of BAKKEN.

94. The present management of BAKKEN has allowed the property to lay to waste by failing to collect rents for the Property, failing to maintain the Property, failing to market the Property, and failing to take commercially reasonable measures to protect the income that could be generated by the Property, failing to keep the operations of the Property ongoing, failing to pay the bills associated with the Property including all Kitchen related expenses.

95. Plaintiff and BAKKEN have suffered damages related to the interest in land associated with the Property, as the direct and proximate cause of defendants conduct set forth herein.

Wherefore, Plaintiff prays that this honorable court grant the following relief:

A) Ordering each of the Defendants to divest themselves of any interest, direct or indirect, in BAKKEN, Goliath Industries LLC, Goliath Holdings and Investments, LLC,

B) Restrain Defendants from further participation in activities or investments related to the Property

C) Restraining Defendants from further disposition of property rightfully belonging to Plaintiff

D) Prohibit defendants from engaging in the same type of endeavor as Goliath Industries, LLC and BAKKEN which affect interstate or foreign commerce;

E) Ordering dissolution or reorganization of Both Goliath Industries LLC and Bakken Holdings and Investments LLC.

F) An order appointing a Receiver.

G) For such other and further and other relief as this court deems just and equitable.


Dated: December 23, 2013						Respectfully submitted,


						By: /s/ Robert T. Hanlon
						Robert T. Hanlon,
						The Law Offices of Robert T. Hanlon & Assoc. P.C.
						14212 Washington Street, #200
						Woodstock, IL 60098
						(815) 206-2200

17

## Jury Demand

Plaintiff demands trial by jury pursuant to FRCP 38 and 39 of all matters related hereto.

                        By: /s/ Robert T. Hanlon
                        Robert T. Hanlon,
                        The Law Offices of Robert T. Hanlon & Assoc. P.C.
                        14212 Washington Street, #200
                        Woodstock, IL 60098
                        (815) 206-2200